IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HALLMARK LICENSING, LLC,<br><br>        Plaintiff,<br><br>  v.<br><br>DONGGUAN ORUI TOYS & GIFTS CO., LTD, et al.,<br><br>        Defendants. | Case No. 24-cv-00112<br><br>**Judge Elaine E. Bucklo**<br><br>**Magistrate Judge M. David Weisman** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
KEKEDUCK'S MOTION TO VACATE DEFAULT JUDGMENT [58]**

Plaintiff Hallmark Licensing, LLC ("Plaintiff" or "Hallmark") submits the following response in opposition to Defendant Kekeduck's (Def. No. 29) ("Defendant") Motion to Vacate Default Judgment [58] ("Defendant's Motion"). Defendant's Motion should be denied. *See Turnpro LLC v. The Entities, et al.*, No. 21-cv-02763 (N.D. Ill. June 24, 2022) (Bucklo, J.) (ECF No. 105) (unpublished) (denying motion to dismiss by China-based Defendant served electronically via e-mail pursuant to Fed. R. Civ. P 4(f)(3)).

**BACKGROUND**

**I. THE PARTIES**

 **A. Plaintiff and the Hallmark Trademarks**

Plaintiff is an industry leader for personal expression products. *See* [1] at ¶ 12. Plaintiff sells and markets a wide variety of products (the "Hallmark Products"), which incorporate Plaintiff's federally registered trademarks, including the HALLMARK word mark (collectively, the "HALLMARK Trademarks"). *See id.* at ¶¶ 5, 13-15.

1

B.  **Defendant and Its Unlawful Conduct**

Defendant is a China-based entity operating an Amazon e-commerce store under its seller alias Kekeduck.  Declaration of Jennifer V. Nacht ("Nacht Decl.") at ¶ 2.  Amazon records indicate Defendant's Amazon account was registered by an entity called "Guang zhou guan teng shi pin you xian gong si," which Defendant clarified is Guangzhou Guanteng Shi Pin Co., Ltd. *Id.* at ¶ 3; [58-2] at ¶ 1.  Defendant offered for sale and sold products bearing a counterfeit of the HALLMARK Trademarks ("Unauthorized Products") to residents in Illinois.  Nacht Decl. at ¶ 2; [1] at ¶ 24.

Defendant represents that the entity "Guangzhou Shi Pin Co., Ltd." operates its seller alias Kekeduck and its address is Room 315, No.111 Bisha Huanchun Street, Shatou Village, Shatou Street, Panyu District, Guangzhou City, Guangdong Province, China, 511400, which was available from Amazon.  [58-2] at ¶¶ 1, 4; *see also* Nacht Decl. at ¶ 3.  Plaintiff searched for the purported address on Google Maps, Baidu Maps, and Bing Maps.  Nacht Decl. at ¶ 4.  The searches returned zero results.  *See id.*  Likewise, Plaintiff searched Google and Baidu for Guangzhou Guanteng Shi Pin Co., Ltd., which produced zero results for an entity called Guangzhou Guanteng Shi Pin Co., Ltd.  *Id.* at ¶ 5. Therefore, when Defendant registered its Amazon account, it provided Amazon with a false, incomplete, or inaccurate address. [17] at 2.

II. **PROCEDURAL HISTORY AND ADDITIONAL BACKGROUND**

Plaintiff filed this action on January 4, 2024.  [1].  On January 11, 2024, this Court entered a Temporary Restraining Order [21] (the "TRO") that, among other things, enjoined Defendant from infringing the HALLMARK Trademarks, and ordered Amazon to provide expedited discovery regarding Defendant's identity and all known contact information for Defendant.  [21] at ¶¶ 1-2.  On January 26, 2024, Amazon provided Plaintiff with Defendant's e-mail address

2

guantengtrading@hotmail.com. Nacht Decl. at ¶ 6. Amazon also disabled Defendant's Unauthorized Product listing and restrained Defendant's Amazon financial account. *Id*.

The TRO also authorized Plaintiff to complete service and provide notice by electronically publishing the Complaint, TRO, and other relevant documents to a website, and by sending an e-mail to Defendant at the e-mail address provided by Amazon. [21] at ¶ 7. Plaintiff electronically published the Complaint, TRO, and relevant documents to http://gbcinternetenforcement.net/24-112/ (the "Service Website"). Nacht Decl. at ¶ 7. The Service Website was updated throughout this action with filed motions, relevant orders, filings, and other documents, was active for the pendency of this case, and is still active. *Id.*

On February 5, 2024, Plaintiff completed service of process on Defendant by sending an e-mail to guantengtrading@hotmail.com that included a link to the Service Website, and had copies of the Complaint [1], Schedule A [2], and Summons attached. [30]; [30-1]. Nacht Decl. at ¶ 8. Plaintiff's e-mail records confirm that the service e-mail did not bounce-back from Defendant's e-mail address, and there is no indication that the e-mail was not successfully delivered. *Id.* Defendant was also provided with notice of the TRO, Plaintiff's Motion for Entry of a Preliminary Injunction [27], and served with expedited discovery that same day via e-mail. *Id.* at ¶ 9. On April 16, 2024, Plaintiff filed its Motion for Entry of Default and Default Judgment [49], and provided notice the same day via e-mail. *Id.* at ¶ 10. Defendant was also served with notice of the Status Reports filed on February 20, 2024, March 19, 2024, and April 23, 2024. *Id.* at ¶ 11. Despite having repeated notice, Defendant did not appear or otherwise object to Plaintiff's Motion [49]. Accordingly, the Court granted Motion [49] and entered the Default Judgment Order [55] (the "Default Judgment") on April 25, 2024. [55]. In sum, Defendant received at least eight e-mails from Plaintiff regarding this case.

3

In addition to receiving repeated notice from Plaintiff, Defendant received notice from Amazon. When Defendant created its Amazon seller account, it provided Amazon with an "administrator" e-mail address, which is the primary e-mail address associated with the account. *See* Declaration of Daven Brodess ("Brodess Decl.") at ¶ 8. Defendant confirmed that its administrator e-mail address is guantengtrading@hotmail.com (which is the same email address that Plaintiff provided notice to). [58] at 6. This e-mail address is tied to Defendant's Amazon account and it receives business critical information from Amazon including infringement notices, payment disbursements from Amazon to the seller, tax information and documentation, and Amazon program updates or terms of service changes. *See* Brodess Decl. at ¶ 8. It also receives other legal notices from Amazon. *Id.*

When Plaintiff's infringement claim was made to Amazon, Amazon would have sent Defendant an e-mail to guantengtrading@hotmail.com and a separate performance notification which could be viewed in Defendant's Seller Central, and would have logged an Account Health notice. *See* Brodess Decl. at ¶ 10. Moreover, Defendant would have received repeated e-mails regarding the asset restraint and its inability to make disbursements. *See id.* at ¶¶ 10-13. Accordingly, it is improbable that an Amazon seller, like Defendant, would not know about this lawsuit or regularly monitor guantengtrading@hotmail.com given that it receives business critical information, and is the default e-mail address that received communications from Amazon. *See id.* at ¶ 9, 13.

On August 6, 2024, Defendant, through counsel, contacted Plaintiff acknowledging the Default Judgment and inquiring about the possibility of settlement. *Id.* at ¶ 12. Plaintiff subsequently provided Defendant with a settlement offer, but did not receive a response. *Id.* Defendant's Motion was filed over five months later on January 13, 2025. [58].

4

**ARGUMENT**

Defendant was properly served and ignored repeated notice throughout this case. Eight months too late, Defendant asks this Court to vacate the properly entered Default Judgment. Defendant argues the Default Judgment is void under Fed. R. Civ. P. 60(b)(4) due to improper service, and that it was entered prematurely under Article 15 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965 (the "Hague Convention"). Both arguments fail.

First, Defendant was properly served pursuant to Fed. R. Civ. P. 4(f)(3) via e-mail and electronic publication as authorized by the Court. The overwhelming majority of Courts in this District, including this Court, have correctly concluded that electronic service is not prohibited by the Hague Convention. *Turnpro LLC*, No. 21-cv-02763 (Bucklo, J.) (ECF No. 105). Second, the plain language of Article 15 provides that it is applicable only where service was completed through the provisions of the Hague Convention. Since Plaintiff did not complete service through the Hague Convention, Defendant's Article 15 argument is foreclosed. Last, Defendant's months long delay despite actual knowledge of the Default Judgment is unreasonable. Since service was proper and there is no basis to vacate the Default Judgment, Defendant's Motion must be denied.

**I.     LEGAL STANDARD**

Relief under Rule 60(b) is "an extraordinary remedy granted only in exceptional circumstances." *LAJIM, LLC v. General Elec. Co.*, 917 F.3d 933, 949 (7th Cir. 2019). "[R]ule 60(b)[] places a heavy burden on the party seeking to undo an existing judgment." *See Disch v. Rasmussen*, 417 F.3d 769, 778-79 (7th Cir. 2005). Default judgments are neither "easily wiped away[,]" nor strongly disfavored in the Seventh Circuit any longer. *Chase Int'l, Inc. v. Link & Pan of Texas, Inc.*, 1995 WL 506056, at *1 (N.D. Ill. Aug. 17, 1995); *see also Metropolitan Life Ins.*

*Co. v. Estate of Cammon*, 929 F.2d 1220, 1224 (7th Cir. 1991) (when discussing the increased use of default judgments by district courts, the Seventh Circuit stated "[m]ore power to them.").

Plaintiff's records confirm that Defendant received at least eight separate e-mails regarding this case from Plaintiff. *See* Nacht Decl. at ¶¶ 8-11. *See, e.g., Chanel, Inc. v. Qi*, No. C-11-0362 CRB, 2011 U.S. Dist. LEXIS 157805, at *7 (N.D. Cal. Jan. 27, 2011) ("The e-mail did not [bounce] back nor was it returned as 'undeliverable,' thereby demonstrating the e-mail was delivered and the e-mail address is valid and operational."). Additionally, Defendant would have received repeated notice from Amazon through various channels. *See* Brodess Decl. at ¶¶ 8-11. Since "[Defendant], after receiving notice, [chose] to let the case go to a default judgment, [it] must then shoulder the burden of proof when the defendant decides to contest jurisdiction in a postjudgment rule 60(b)(4) motion." *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir. 1986); *see also Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 911 (7th Cir. 2015) ("On a Rule 60(b)(4) motion, the defendant bears the burden of proving the court's lack of personal jurisdiction."). Given that Defendant ignored repeated notice of this case "the burden of proof shifts to [Defendant] in attempting to contest personal jurisdiction in its Rule 60(b)(4) motion; any conflicts between the affidavits submitted by Plaintiff and [Defendant] must be resolved in favor of the Plaintiff." *Carr v. Pouilloux, S.A.*, 947 F. Supp. 393, 395 (C.D. Ill. 1996).

Further, "[w]hile a party 'may challenge a default judgment as void for lack of personal jurisdiction at any time,' that rule 'does not preserve in perpetuity a party's claim regarding personal jurisdiction, regardless of any strategy it pursues in the district court.'" *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857 (7th Cir. 2011).

6

## II. DEFENDANT'S FED. R. CIV. P. 60(B)(4) ARGUMENT FAILS

Defendant does not challenge that Plaintiff completed service as authorized by the Court, but instead, argues that authorizing electronic service was improper, and that Plaintiff needed to compete service through the Hague Convention. [58] at 4-9. This argument fails because Plaintiff was not required to complete service through the Hague Convention and electronic service is not prohibited by the Hague Convention. *Turnpro LLC*, No. 21-cv-02763 (Bucklo, J.) (ECF No. 105). Accordingly, the Defendant's improper service argument fails.

### A. Service Through The Hague Convention Was Not Mandatory

#### i. The Hague Convention does not apply because Defendant's address is unknown

Article 1 of the Hague Convention states that "[t]his Convention shall not apply where the address of the person to be served with the document is not known." Hague Convention, 20 U.S.T. 361, 658 U.N.T.S. 163, 1969 U.S.T. LEXIS 152, at *16. Defendant's Amazon storefront included an address in Chinese characters which translates to Room 315, No.111 Bisha Huanchun Street, Shatou Village, Shatou Street, Panyu District, Guangzhou City, Guangdong Province, China, 511400. [58-2] at ¶ 4. However, Plaintiff's investigation returned zero results for this address, nor any business named "Guangzhou Guanteng Shi Pin Co., Ltd." at this or any address. *See* Nacht Dec. at ¶¶ 4-5. Accordingly, Defendant's address was not known or was reasonably uncertain. *See Piechowicz v. P'ships et al.*, No. 24-CV-3057, 2024 U.S. Dist. LEXIS 176326 (S.D.N.Y. Sep. 24, 2024) (finding that the plaintiff conducted reasonable diligence where "plaintiff has submitted a declaration indicating that her attorney attempted to discover a physical address for service of each Defendant located in China by researching the address listed on the Amazon storefront of each Defendant; searching for the address on multiple search engines, including a Chinese service; and searching for potential other addresses of each Defendant on multiple search engines."). Since

7

Defendant's address was unknown or reasonably uncertain, Plaintiff was not required to complete service pursuant to the Hague Convention. Hague Convention, 1969 U.S.T. LEXIS 152, at *16; *see, e.g., MCM Holding AG, et al. v. Dequn Zhao, et al.*, No. 18-cv-1677 (N.D. Ill. Aug. 14, 2018) (Dkt. No. 42) (unpublished) (Kennelly, J.).

    ii.    <u>Even if Defendant's Address was Known, Plaintiff was not required to complete service pursuant to the Hague Convention</u>

Rule 4(f) provides that individuals in foreign countries may be served (1) "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention"; (2) "by a method that is reasonably calculated to give notice," if there is "no internationally agreed means"; or (3) "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f).  Plaintiff was not required to attempt completing service through the Hague Convention under Rule 4(f)(1) before seeking alternative service under Rule 4(f)(3). *Peanuts Worldwide LLC v. P'ships, et al.*, 347 F.R.D. 316, 329 (N.D. Ill. 2024); *see also CFTC v. Caniff*, No. 19-cv-02935, 2020 U.S. Dist. LEXIS 33416, at *14 (N.D. Ill. Feb. 27, 2020) (internal citation omitted) (explaining, a plaintiff "is not required to first attempt service through the [Hague Convention] under Rule 4(f)(1) before asking this Court to allow alternate means").

"[N]o language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002); *Viahart, L.L.C. v. He GangPeng*, No. 21-40166, 2022 U.S. App. LEXIS 3974 (5th Cir. Feb. 14, 2022) (upholding e-mail service on China based defendant and finding that "we need not address that argument because service was made pursuant to subsection (f)(3), not subsection (f)(1) or the Hague Convention."); *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498

(5th Cir. 2018); *see also Oakley Inc. v. Yantai Lanlei Network Tech. Co.*, No. 20-cv-00396 (N.D. Ill. May 12, 2021) (Dkt. No. 54) (unpublished) (Wood, J.) at p. 2 ("… the Federal Rules do not require plaintiffs to attempt service under Rule 4(f)(1) before moving on to Rule 4(f)(3).").

Attempting service through the Hague Convention was not required before employing alternative service methods. *Nuance Comm'ns. v. v. Abbyy Software House,* 626 F.3d 1222, 1238 (Fed. Cir. 2010) (collecting cases). "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing." *In re OnePlus Tech. (Shenzhen) Co.,* No. 2021-165, 2021 WL 4130643, at *3 (Fed. Cir. Sept. 10, 2021); *see* 4B Charles Alan Wright, et al., FEDERAL PRACTICE & PROCEDURE § 1134, at 274 (2015) ("The use of a court-directed means for service of process under Rule 4(f)(3) is not a disfavored process and should not be considered extraordinary relief."). In other words, alternate service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Rio Props.*, 284 F.3d at 1015. As such, Plaintiff was not required to serve Defendant through the Hague Convention's means under Rule 4(f)(1).

**B.     The Court Properly Ordered Service Under Fed. R. Civ. P 4(f)(3)**

In this case, the Court properly asserted its wide discretion under Fed. R. Civ. P. 4(f)(3) to find that electronic service was justified and constituted "notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections." [21] at ¶ 7; *see also Turnpro LLC*, No. 21-cv-02763 (ECF No. 105) at 6-7. "[T]he task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)" is committed "to the sound discretion of the district court." *Rio Prop.*, 284 F.3d at 1014; *In re OnePlus Tech. (Shenzhen) Co., Ltd.*, 2021 WL 4130643, at *3 ("[C]ourts have recognized that delay and expense are factors that legitimately bear on whether to issue an order for alternative service.").

9

The overwhelming majority of Courts in this District, including this Court, have repeatedly upheld electronic service and found authorizing alternative service through Rule 4(f)(3) appropriate in similar cases. *See, e.g., Turnpro LLC*, No. 21-cv-02763 (Bucklo, J.) (ECF No. 105); *Peanuts Worldwide LLC*, 347 F.R.D. at 327 (Pallmeyer, J.); *NBA Props. v. The P'ships, et al.*, 549 F. Supp. 3d 790, 795 (N.D. Ill. July 15, 2021) (Kness, J.); *Klauber Bros. v. P'ships, et al.*, No. 23 C 10407, 2024 U.S. Dist. LEXIS 8397, at *7-10 (N.D. Ill. Jan. 17, 2024) (Durkin, J.); *Gianni Versace, S.P.A. v. P'Ships, et al.*, 2019 U.S. Dist. LEXIS 94989, at *3 (N.D. Ill. Feb. 27, 2019) (Wood, J.); *Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 U.S. Dist. LEXIS 118876, at *8-10 (N.D. Ill. June 25, 2021) (Gettleman, J.); *Those Characters from Cleveland, LLC v. The Individuals, et al.*, 23-cv-01923 (N.D. Ill. Oct. 25, 2023) (Dkt. No. 49) (unpublished) (Jenkins, J.); *Harley-Davidson Motor Company, Inc. v. The P'Ships, et al.*, No. 24-cv-00619 (N.D. Ill. July 15, 2024) (ECF No. 76) (unpublished) (Blakey, J.) (denying 60(b)(4) motion based on improper service); *Neman Brothers & Associates, Inc. v. The P'ships, et al.*, No. 24-cv-05666 (N.D. Ill. Dec. 10, 2024) (ECF No. 100) (unpublished) (Tharp, J.); *Wham-O Holding,Ltd, et al. v. The P'Ships, et al.*, No. 21-cv-01641 (N.D. Ill. July 28, 2023) (ECF No. 128) (unpublished) (Valderrama, J.); *Tommy Hilfiger Licensing LLC, et al. v. The P'Ships, et al.*, No. 20-cv-07477 (N.D. Ill. Mar. 24, 2021) (ECF No. 46) (unpublished) (Kennelly, J.).

Court-directed electronic service pursuant to Rule 4(f)(3) is particularly appropriate in this case where "there is a need for speed that cannot be met by following the Hague Convention methods…." *See Strabala v. Zhang,* 318 F.R.D. 81, 114 (N.D. Ill. 2016). Even if Defendant's purported address was real and Defendant was available for service at that address, it is nearly certain that the Chinese Central Authority would exceed six months in its attempt to effectuate service. *See Victaulic Co. v. Allied Rubber & Gasket Co.*, No. 3:17-cv-01006-BEN-JLB, 2020

U.S. Dist. LEXIS 82150, at *3 (S.D. Cal. May 8, 2020), ("… the Ministry of Justice in China noted that service is 'time-consuming and not efficient' and confirmed that it often takes more than two years to complete."); *see also Peanuts Worldwide LLC*, 347 F.R.D. at 331 ("Schedule A plaintiffs cannot, as a practical matter, wait up to six months—an eternity in the e-commerce world—to physically serve dozens of overseas defendants who often have no real defense to the merits of their infringement claims."). As such, it would have been impossible to effectuate service on Defendant prior to expiration of the TRO and would have required documents previously filed under seal to remain under seal for an extended period of time. *Id.*

Moreover, "email offers many advantages over the older methods of service spelled out in the Convention: it is instantaneous, it does not require physical intrusion into the receiving country's territory, and it is often a more reliable way of reaching overseas e-commerce vendors who must maintain a verified email address in connection with their seller profiles." *Peanuts Worldwide LLC*, 347 F.R.D. at 330; *see also Rio Prop.*, 284 F.3d at 1018 ("Indeed, when faced with an international ebusiness scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process"). Electronic service also comports with constitutional notions of due process, because it was reasonably calculated, under all the circumstances, to apprise Defendant of the pendency of this action and afford Defendant an opportunity to present objections. *See Turnpro LLC*, No. 21-cv-02763 (ECF No. 105); *Maclean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 U.S. Dist. LEXIS 97241, at *5 (N.D. Ill. Dec. 1, 2008); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. Nov. 27, 2015) ("the Court finds that in this case, service to the email address listed on defendant's website is 'reasonably calculated, under all circumstances, to apprise interested parties

11

of the pendency of the action and afford them an opportunity to present their objections.'"). Accordingly, the Court properly authorized service pursuant to Rule 4(f)(3).

     **C.    The Hague Convention Does Not Prohibit, and China has not objected to, Electronic Service**

Postal channels and e-mail are two very different things. Postal channels are a means for delivering physical items like letters and packages through entities such as the U.S. postal service, FedEx, and UPS. E-mail is a means for transmitting digital messages electronically between devices on a network. Defendant argues that the Hague Convention prohibits electronic service based on a misinterpretation of *Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017) and *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S. Ct. 2104 (1988). [58] at 7. However, the Hague Convention neither authorizes nor prohibits service by e-mail—it is entirely silent on the issue. *See Maclean-Fogg Co.*, 2008 U.S. Dist. LEXIS 97241, at *2; *see also Peanuts Worldwide*, 347 F.R.D. at 330-331 ("[I]f the contracting states really wished to bind themselves to the limited universe of alternative service methods available in 1965, they might have included a more explicit statement clarifying that the means of service set forth in the Convention were intended to be exclusive.") (internal quotations omitted).

This same misinterpretation has been repeatedly rejected by Courts in this District, and Defendant fails to provide any binding authority that the Hague Convention prohibits electronic service or that its listed means must be treated as exclusive.[1] *See, e.g., Turnpro LLC*, No. 21-cv-2763 (Dkt. No. 105) at 5, ft. 4 (Bucklo, E.); *Peanuts Worldwide*, 347 F.R.D. at 331; *NBA Props.*, 549 F. Supp. 3d at 797-98. Absent, such authority, the "'overwhelming majority of courts in this

---

[1] Defendant's counsel made the same argument in *Kiel James Patrick, LLC v. Doe, et al.* in the District of Rhode Island. No. 1:24-cv-00326-MSM-LDA (D.R.I. Sept. 30, 2024) (ECF No. 22) (Mot. to Dismiss). That Court summarily rejected Defendant's counsel's argument. *Kiel James Patrick, LLC*, No. 1:24-cv-00326-MSM-LDA (D.R.I. Feb. 4, 2025) (ECF No. 28) (unpublished).

district' [have reached] the more straightforward conclusion that the Convention does not prohibit service by email" (*Peanuts Worldwide*, 347 F.R.D. at 323) "which is grounded in the plain text of Rule 4(f)(3) and the Hague Convention." *Turnpro LLC*, No. 21-cv-2763 (Dkt. No. 105) at 5.

While China has objected to service by postal channels under Article 10 of the Hague Convention, courts have routinely recognized that such objections do not extend to service by e-mail. *See, e.g., Oakley Inc.*, No. 20-cv-00396 (Dkt. No. 54) at 2 ("[M]any courts have rejected the analogy of postal service to email service, recognizing that 'the instantaneous and traceable nature of email cures the concerns with postal service[,'] . . . Furthermore, unlike postal service, email does not require physical intrusion on Chinese territory, which is China's express objection to the availability of postal service under the Hague Convention."); *see also Victaulic Co.*, 2020 U.S. Dist. LEXIS 82150, at *7 ("Although Article 10(a) references 'postal channels,' it does not mention service by email, online messaging system, or other electronic means. Thus, China's objection to service by 'postal channels' does not prohibit service by 'electronic means.'").

Defendant's reliance on an out of district decision and reference to guidance from the Ministry of Justice of China and China's Civil Procedure Law regarding service is misplaced.[2] [58] at 10. *See Peanuts Worldwide*, 347 F.R.D. at 330-31 (rejecting identical argument and evidence); *Harley-Davidson Motor Company, Inc.*, No. 24-cv-00619 (ECF No. 76) (Blakey, J.) (same); *Kiel James Patrick, LLC*, NO. 1:24-cv-00326-MSM-LDA (ECF No. 28) (same). The guidance is not formal law, not binding on China's own courts, and not binding on this Court.

---

[2] *Smart Study Co. v. Acuteye-US*, a non-controlling district court decision from outside of this District, which looked at China's Civil Procedure law. [58] at 10. *Smart Study Co.* is also not the majority view in its own district. The cited analysis of Article 284 of China Civil Procedure is from the *Smart Study* court's discussion of Fed. R. Civ. P. 4(f)(2)(C), and is not relevant to Fed. R. Civ. P. 4(f)(3). *See Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1397-98 (S.D.N.Y. 2022). Plaintiff also notes that an appeal of this decision is pending. *See Smart Study Co. v. Acuteye-US*, No. 24-313 (2d Cir. Jan. 31, 2024).

*Peanuts Worldwide*, 347 F.R.D. 329, n.12. Further, China's internal procedures for effectuating service is irrelevant to the question of whether alternate service under Rule 4(f)(3) was proper in a lawsuit pending in the United States. *See Kiel James Patrick, LLC*, NO. 1:24-cv-00326-MSM-LDA (ECF No. 28) ("Even assuming that, as the defendant submits, direct service by a foreign party on an individual in China is invalid under Chinese law, Rule 4(f)(3) allows a court to order service by a means in contravention of the laws of a foreign country") (internal quotation omitted); *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, 2018 U.S. Dist. LEXIS 169603, at *13 (S.D.N.Y. Sep. 30, 2018) ("Even if true, the fact that email service does not comport with Chinese law or instructions from the Chinese government under the Hague Convention is inapposite to the Rule 4(b)(3) inquiry, which requires only that service is not prohibited by international agreement."); *see also Rio Props.*, 284 F.3d at 1014 ("As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement," and "no other limitations are evident from the text."); *Nanya Tech. Corp. v. Fujitsu, Ltd.*, No. 06-00025, 2007 U.S. Dist. LEXIS 5754, at *14 (D. Guam Jan. 25, 2007) (the Court should not consider the receiving country's laws of service when evaluating whether service pursuant to Fed. R. Civ. P. 4(f)(3) was proper). Accordingly, Defendant fails to demonstrate the electronic service is either prohibited by the Hague Convention, or that China has objected to it. As such, authorizing electronic service was proper.

**III.    ARTICLE 15 OF THE HAGUE CONVENTION IS NOT APPLICABLE**

Article 15 of the Hague Convention provides that "[w]here a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, <u>under the provisions of the present Convention</u>, and the defendant has not appeared, judgment shall not be given until it is established that" (a) the Court has received sufficient proof that the summons and other

documents were served or actually delivered in sufficient time to enable the defendant to defend, or (b) at least six months have passed since service was attempted under the Hague Convention without any proof of success, despite the plaintiff's best efforts. Hague Convention, 1969 U.S.T. LEXIS 152, at *21-22 (emphasis added); *Peanuts Worldwide LLC*, 347 F.R.D. at 331. In this case, service was completed pursuant to Rule (4)(3), and not "under the provisions of the present Convention." Hague Convention, 1969 U.S.T. LEXIS 152, at *21. Accordingly, Article 15 is inapplicable to this case.

In any event, even if Article 15 was applicable to this case, the six month waiting period is reserved for cases where "service was attempted under the Convention without any proof of success, despite the plaintiff's best efforts." *Peanuts Worldwide LLC*, 347 F.R.D. at 332. As established above, Plaintiff served Defendant via electronic service and executed a return of service on February 5, 2024. [30]. Defendant had actual notice of this case yet chose to ignore it. Accordingly, all that is required under Article 15 is that service was completed and Defendant has sufficient time to respond to the complaint. *See Peanuts Worldwide LLC*, 347 F.R.D. at 332, n.16.

## IV. DEFENDANT'S DELAY IS UNREASONABLE

"[Rule 60(b)(4)] 'does not preserve in perpetuity a party's claim regarding personal jurisdiction, regardless of any strategy it pursues in the district court.'" *Philos Techs.*, 645 F.3d at 857. Even assuming *arguendo*, that Defendant somehow did not have actual notice of this case, Defendant cannot dispute it knew of the Default Judgment since at least August 6, 2024. Yet, without any explanation, Defendant's Motion was not filed until January 15, 2025. Accordingly, the Court should deny Defendant's Motion as untimely.

## CONCLUSION

For the forgoing reasons, Defendant's Motion should be denied.

Dated this 11th day of February 2025.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Rachel S. Miller
Jennifer V. Nacht
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rmiller@gbc.law
jnacht@gbc.law

*Counsel for Plaintiff Hallmark Licensing, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of February 2025, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in the case.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Rachel S. Miller
Jennifer V. Nacht
Greer, Burns & Crain, Ltd.
200 West Madison, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rmiller@gbc.law
jnacht@gbc.law

*Counsel for Plaintiff Hallmark Licensing, LLC*
